UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

Case No. 11-62230-CIV-MIDDLEBROOKS/VITUNAC

MARK KRZYKWA & ETHEL THOMAS,
on Behalf of Themselves and All
Others Similarly Situated,

        Plaintiffs,
v.

PHUSION PROJECTS, LLC d/b/a
DRINK FOUR BREWING CO.,

        Defendant.
_____/



## ORDER ON DEFENDANT'S MOTION TO DISMISS

THIS CAUSE is before the Court upon Defendant Phusion Projects, LLC's, ("Phusion") Motion to Dismiss ("Motion") (DE 15), filed January 20, 2012. I have reviewed the Motion, Plaintiffs Mark Krzykwa's ("Krzykwa") and Ethel Thomas's ("Thomas") Response (DE 15), Phusion's Reply (DE 19), Plaintiffs' Notice of Supplemental Authority (DE 24), the record in this case, and am otherwise fully advised in the premises.

On January 6, 2012, Plaintiffs filed their First Amended Class Action Complaint, in which they allege during the time Plaintiffs purchased Four Loko (1) Phusion engaged "in unfair methods of competition, unconscionable acts and practices, and unfair and deceptive acts and practices" in violation of Florida's Deceptive and Unfair Trade Practices Act, *see* Fla. Stat. §§ 501.201-501.213 ("Count One"), and, as a result of Phusion's deceptive trade practices, (2) Phusion was unjustly enriched ("Count Two"). (*See* DE 13 at 17-20).

**I. BACKGROUND**

Phusion is an alcoholic-beverage company based in Chicago. (*See* DE 15 at 2). At the time Plaintiffs purchased Four Loko, Phusion sold Four Loko, which is a beverage that contained both alcohol and caffeine. (*See* DE 13 at ¶ 1). Phusion began selling Four Loko in 2008. (*See* DE 15 at 2). When it was originally sold, Four Loko was sold in 23.5 ounce cans and contained between 6-12% alcohol by volume, the percentage of alcohol varied by state. (*See* DE 13 at ¶ 15). Additionally, Four Loko originally contained approximately 135 milligrams of caffeine, which is equivalent to the amount of caffeine contained in an eight-ounce cup of coffee. (*See* DE 13 at ¶ 16). Plaintiffs allege "the combination of high levels of alcohol and caffeine" present in Four Loko "produce[d] mild-altering [sic] effects that" were not disclosed to the public. (*See* DE 13 at ¶ 19).

Between May and August 2010, Krzykwa alleges he purchased Four Loko about three times at a price of $2.50 a can. (*See* DE 13 at ¶ 38). Purportedly, the last time Kryzkwa consumed Four Loko, "almost immediately after consuming Four Loko", he became ill and "suffered loss of memory, and continued to suffer from these conditions for two days after his consumption of Four Loko." (*See* DE 13 at ¶ 38). Thomas purportedly purchased Four Loko for approximately $2.00 on October 31, 2010, and, almost immediately after consuming Four Loko, Thomas "became ill, suffered loss of memory, and her illness continued for several days." (*See* DE 13 at ¶ 39).

With respect to Count One, Plaintiffs allege they and other class members were "damaged in the amount of the difference between the premium price paid for Four Loko and the price they would have paid had they known that Four Loko was not safe when consumed in that it had harmful effects including, but not limited to, causing sickness, alcohol poisoning, and even death." (*See* DE 13 at ¶ 60). As for Count Two, Plaintiffs claim that they and other class

members "are entitled to restitution of the excess amount paid for Four Loko, over and above what they would have paid had they known that Four Loko was not safe when consumed in that it had harmful side effects including, but not limited to, causing sickness, alcohol poisoning, and even death." (*See* DE 13 at ¶ 70).

On December 9, 2011, Phusion sent Plaintiffs' counsel a letter, in which Phusion offered "to settle the case by giving Plaintiffs" what they "claim they are owed." (*See* DE 15 at 7). Specifically, Phusion offered to give "Plaintiffs a full refund of the purchase price for all cans of Four Loko they purchased, plus an additional amount of $30 for each purchase, and any reasonable attorney's fees and costs that Plaintiffs have incurred in filing their pending Complaints." (*See* DE 15 at 7). As of today, Plaintiffs have not moved to certify the class.

Phusion argues Plaintiffs' First Amended Class Action Complaint should be dismissed with prejudice because (1) Plaintiffs' claims are moot; (2) Plaintiffs' claims are preempted by the federal Alcoholic Beverage Labeling Act; and (3) the First Amended Class Action Complaint fails to state a claim upon which relief can be granted. Since the doctrine of mootness, if applicable, would dispose of these claims with no need to address the merits of these causes of action, I turn first to Phusion's use of that defense.

## II. DISCUSSION

Article III of the Constitution limits a federal court's jurisdiction to live "cases" and "controversies." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351 (1992). Due to the fact that the "judiciary is unelected and unrepresentative, the Article III case-or-controversy limitation, as embodied in justiciability doctrine, presents an important restriction on the power of the federal courts." *Coral Spring Street Sys., Inc. v. City of Sunrise*, 371 F.3d 1320, 1327 (11th Cir. 2004) (quoting *Socialist Workers Party v. Leahy*, 145

3

F.3d 1240, 1244 (11th Cir. 1998)). "The powerful limitations that Article III places on the federal judiciary—including the mootness doctrine—relate to a centuries-old 'idea ... about the constitutional and prudential limits to the powers of an unelected, unrepresentative judiciary in our kind of government.'" *Id.* at 1328 (quoting in part *Vander Jagt v. O'Neill*, 699 F.2d 1166, 1179 (D.C. Cir. 1982) (Bork, J., concurring)). Undeniably, if a suit is moot, a plaintiff's claims cannot present an Article III case or controversy; accordingly, the federal courts are deprived of subject matter jurisdiction. *See Al Najjar v. Ashcroft,* 273 F.3d 1330, 1336 (11th Cir. 2001) (per curiam).

As the Supreme Court articulated: the doctrine of "[m]ootness has been described as 'the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).'" *Arizonans for Official English v. Arizona,* 520 U.S. 43, 68 n. 22, 117 S. Ct. 1055, 1069 n. 22, 137 L. Ed. 2d 170 (1997) (quoting *United States Parole Comm'n v. Geraghty,* 445 U.S. 388, 397, 100 S. Ct. 1202, 1209, 63 L. Ed. 2d 479 (1980)). Accordingly, "[o]nce the defendant offers to satisfy the plaintiff's entire demand, there is no dispute over which to litigate, and a plaintiff who refuses to acknowledge this loses outright, under Fed. R. Civ. P. 12(b)(1), because he has no remaining stake." *Damasco v. Clearwire Corp.,* 662 F.3d 891, 895 (7th Cir. 2011) (quoting *Rand v. Monsanto Co.,* 926 F.2d 596, 598 (7th Cir. 1991) (citation omitted)); *see also Cameron-Grant v. Maxim Healthcare Servs., Inc.,* 347 F.3d 1240, 1244 (11th Cir. 2003) ("The general rule is that settlement of a plaintiff's claims moots an action." (citation omitted)).

In the case of a class action, however, the circuits are split on whether a defendant can moot a case by making an offer to satisfy the plaintiff's entire demand. *Compare Damasco v. Clearwire Corp.,* 662 F.3d 891, 896 (7th Cir. 2011) ("To allow a case, not certified as a class

action and with no motion for class certification even pending, to continue in federal court when the sole plaintiff no longer maintains a personal stake defies the limits on federal jurisdiction expressed in Article III.") with *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1090-91 (9th Cir. 2011) (holding that a settlement offer did not moot the named plaintiff's claim because plaintiff's claim is transitory in nature and capable of repetition because other members of the class may have a similar claim). As of today, the Eleventh Circuit has not addressed the issue of whether a defendant can render a plaintiff's class action complaint moot by making a settlement offer to the named plaintiff before the named plaintiff moves to certify the class.

After carefully considering the instant Motion and other circuit's case law, I find the reasoning set forth by the Seventh Circuit in *Damasco* both persuasive and compelling. The facts in *Damasco* are strikingly similar to the facts in the instant matter. In *Damasco*, plaintiff filed a class action complaint in state court seeking both to enjoin the defendant corporation "from sending unsolicited text messages and" to collect damages for "all those injured by this practice." *Damasco v. Clearwire Corp.*, 662 F.3d 891, 893 (7th Cir. 2011). About a month after plaintiff filed the complaint, the defendant corporation sent plaintiff's counsel a letter "offering to settle the case by giving [plaintiff] and up to ten other affected people $1,500 for each text message received from" the corporate defendant; additionally, the defendant corporation agreed to cease sending unsolicited text messages. *Id.* Four days after the corporate defendant sent plaintiff's counsel the settlement letter, the corporate defendant removed the suit to federal court. Within a few hours of removal, plaintiff filed a motion for class certification, and, on the following day, the corporate defendant moved the court to dismiss the matter for lack of subject matter jurisdiction. *Id.*

Plaintiff opposed the corporate defendant's motion to dismiss and argued, among other things, that the type of claim he asserted was "inherently transitory— that is, bound to become moot before the class is certified— so his motion for recertification should relate back to the" day he filed his complaint. *Id.* The district court disagreed with plaintiff and dismissed plaintiff's complaint for lack of subject matter jurisdiction. For the reasons articulated below, the Seventh Circuit found an exception to the mootness doctrine unnecessary in the case of class actions and affirmed the district court's holding.

First, the *Damasco* plaintiff contended that the Seventh Circuit's prior decision in *Holstein v. City of Chicago* should be narrowly construed or overturned; however, the Seventh Circuit refused to overturn its prior holding. *Id.* at 895. Previously, in *Holstein*, the Seven Circuit held that the plaintiff's putative class action against the City of Chicago was moot because "[b]efore he moved to certify [the class], the city offered him full reimbursement" for his individual claim. *Id.* at 895 (citing *Holstein v. City of Chicago*, 29 F.3d 1145, 1147 (7th Cir. 1994)).

In *Damasco*, the Seventh Circuit affirmed its earlier decision in *Holstein*, in which it held that it "refused to let [a plaintiff] 'spurn this offer' and avoid mootness when he 'did not even move for class certification prior to the evaporation of his personal stake'"; accordingly, the Seventh Circuit repeated that "[t]he plaintiff's lack of a personal stake [in the litigation] stripped [the district court] of jurisdiction over his claim." *Id.* at 895 (citing *Holstein v. City of Chicago*, 29 F.3d 1145, 1147 (7th Cir. 1994)). The Seventh Circuit provided additional support for its position that a plaintiff's claim is moot when a defendant offers to settle a named plaintiff's claim in full before the named plaintiff moved for certification, and stated:

> To allow a case, not certified as a class action and with no motion for class certification even pending, to continue in federal court when the sole plaintiff no

6

> longer maintains a personal stake defies the limits on federal jurisdiction expressed in Article III. That the complaint identifies the suit as a class action is not enough by itself to keep the case in federal court. Even when a complaint clearly and in great detail describes the suit as a class action suit, if the plaintiff does not seek class certification, then dismissal of the plaintiff's claim terminates the suit.

*Damasco v. Clearwire Corp.*, 662 F.3d 891, 896 (7th Cir. 2011) (internal quotation marks and citations omitted). Additionally, the Seventh Circuit provided the following "simple solution" to plaintiff's argument that this practice allows defendants to "buy-off" class actions by offering to settle the named plaintiff's claims: "[c]lass-action plaintiffs can move to certify the class at the same time that they file their complaint" because "[t]he pendency of that motion protects a putative class from attempts to buy off the named plaintiffs." *Id.* at 896.

Similar to the corporate defendant in *Damasco*, in the instant matter, "Phusion offered to settle Plaintiffs' claims in their entirety"; additionally, as of today, Plaintiffs have not moved the Court to certify a class. (*See* DE 15 at 7). Because Phusion offered to settle Plaintiffs' claims in full before they moved to certify the class, Phusion asserts that this Court lacks subject matter jurisdiction over the instant matter because Plaintiffs' claims are moot since they have been stripped of their personal stake in this litigation.

In response to Phusion's argument that the mootness doctrine deprives this Court of subject matter jurisdiction, Plaintiffs solely point to an unpublished district court order, which is factually distinguishable from this matter. (*See* DE 18 at 8 (citing *Capote v. United Collection Bureau, Inc.*, 2010 U.S. Dist. LEXIS 36948 (S.D. Fla. Mar. 11, 2010)). Factual discrepancies aside, I find the very brief reasoning by the court in *Capote* less persuasive than the reasoning set forth by the Seventh Circuit. In *Capote*, the district court stated that the practice of permitting defendants to moot a plaintiff's class action complaint by making a full settlement offer would

allow defendants to "pick off" class action complaints and would waste judicial resources. (09-CV-61834-JIC DE 21 at 3-4 (citation omitted)).

I find the argument that the Seventh Circuit's holding in *Damasco* would allow defendants to "pick off" plaintiffs unpersuasive. (*See* DE 18 at 8). As set forth by the Seventh Circuit in *Damasco*, a plaintiff could easily avoid this situation by simultaneously filing a motion for class certification with his complaint. Allowing a plaintiff who filed a class action complaint to proceed after he loses his personal stake in the matter would defy the limitations of Article III, which were enacted for the purpose of limiting the federal judiciary's power.

Moreover, the claim that this policy would waste judicial resources is neither relevant nor credible after considering the facts of this matter. (*See* DE 18 at 8). First, this argument is irrelevant because considerations of judicial resources should not permit federal courts to circumvent or ignore the limitations Article III places on the federal judiciary. Second, the facts of this case demonstrate that Plaintiffs wasted significant judicial resources litigating their claims. Thomas first filed a class action complaint against Phusion on January 5, 2011. (*See* 11-CV-20035-DE 1). Shortly thereafter, Phusion filed a motion to dismiss, and, rather than responding, Thomas filed an amended complaint. (*See* 11-CV-20035-DE 13-14). Again, Phusion filed a motion to dismiss Thomas's amended complaint, and, after Thomas's motion for extension of time to file a response to Phusion's motion to dismiss was denied, Thomas voluntary dismissed her amended class action complaint. (*See* 11-CV-20035-DEs 21-24).

Approximately five months later, Thomas and Krzykwa filed a Class Action Complaint against Phusion, which is virtually identical to the complaint Thomas had previously filed. (*See* DE 1). As before, Phusion filed a Motion to Dismiss Plaintiffs' Complaint; and, yet again, Plaintiffs filed an Amended Class Action Complaint. Therefore, this First Amended Class Action

Complaint is, in reality, Thomas's fourth attempt at suing Phusion. Based upon Thomas's course of conduct, it is inconceivable that she would not have been prepared to at least file a Motion for Class Certification at the time she filed her Class Action Complaint. Even if Thomas needed additional time to conduct limited discovery about the class, this Court could have stayed its determination on the motion until Thomas concluded discovery. Thus, I find the facts of this case seriously undermine Plaintiffs' argument that permitting Phusion to render their claims moot by making a full settlement offer to them before they filed a Motion for Class Certification would waste judicial resources. (*See* DE 18 at 8).

### III. CONCLUSION

Phusion's offer to settle Plaintiffs' claims in full, which Phusion made before Plaintiffs moved to certify the class, render Plaintiffs' claims moot. Accordingly, because I find that Plaintiffs' claims are moot, it is unnecessary to address Plaintiffs' two alternate grounds for dismissal, and, it is hereby

**ORDERED AND ADJUDGED** that Defendant's Motion to Dismiss (DE 15) is **GRANTED**. Plaintiffs' Amended Class Action Complaint is **DISMISSED WITH PREJUDICE**. All pending motions are **DENIED AS MOOT**, and, the Clerk of Court shall **CLOSE** this case.

**DONE AND ORDERED** at Chambers in West Palm Beach, Florida, this 22 day of March, 2012.

DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT JUDGE

Copies to:    Counsel of Record

9